13423

McABEE v. SOUTHERN RWY. CO.

(164 S. E., 444)

*Messrs. McDonald, Macaulay & McDonald* and *F. G. Tompkins,* for appellant,

*Messrs. Gaston, Hamilton & Gaston* and *J. H. Glenn,* for respondent,

June 7, 1932.

The opinion of the Court was delivered by MR. CHIEF JUSTICE BLEASE.

The action, instituted and tried in the Court of Common Pleas for Chester County, for personal injuries to the respondent, grew out of a collision at a public street crossing in the City of Union between an automobile operated by the respondent and a train of the appellant railway company. The verdict and the judgment were against the railway company for the sum of $1,200.00.

In the main appeal, there are six exceptions, but, under the view we take of the case, it is only necessary to pass upon one of them—the second.

The engineer, in charge of the engine involved in the collision, testified that the bell of the locomotive was rung in compliance with the statute. Section 4903, 1922 Civ. Code,

Section 8355, 1932 Code. He admitted that the whistle was not sounded, and offered as an excuse for the failure so to do the fact that an ordinance of the City of Union prohibited the blowing of a locomotive whistle within the limits of that municipality. The respondent testified that he did not hear the ringing of the bell. He indicated in his testimony that he could have heard the sounding of the locomotive whistle. The attorneys for the respondent argued that, if the whistle had been sounded, this loud, penetrating, and startling noise would have attracted the attention of the respondent, as he was about to cross the railroad track, and thereby the accident would have been prevented.

The instructions of the trial Judge to the jury, touching the ordinance of the City of Union, complained of by the appellant, and made the basis of the second exception, were as follows: "I charge you, gentlemen of the jury, that if you should find from any evidence that you have heard in this case that the City of Union has an ordinance that prohibits the blowing of a locomotive whistle in the City of Union that such an ordinance would be beyond the power of a municipality to pass, because it would be contrary to the laws of the State of South Carolina, which require under certain circumstances the blowing of the whistle. The government of a municipality is created by the laws of the State of South Carolina, and the creature cannot be greater than its creator, and the laws of a municipality to be good must not be inconsistent with the laws of the State."

It is provided in the "signaling statute" (Section 8355, 1932 Code, Section 4903, 1922 Civ. Code) that "such bell shall be rung or such whistle sounded by the engineer or fireman or motorman * * * and be kept ringing or whistling. * * *" The statute does not require both the ringing of the bell and the blowing of the whistle. The ringing of the bell or sounding of the whistle, so far as the statute is concerned, is a sufficient signal of the moving or approach of the train. *Timmons v.*

*Southern Railway Co.,* 138 S. C., 82, 136 S. E., 27; *Bowen v. Southern R. Co.,* 58 S. C., 222, 36 S. E., 590; *Sanders v. Charleston & W. C. R. Co.,* 93 S. C., 543, 77 S. E., 289.

It appears to be conceded by both parties to this suit, and in our opinion properly so, that the City of Union, in and by its properly constituted authorities, had the right and power, under the provisions of Section 7233 of the Code of 1932 (Section 4388, Civ. Code of 1922), relating to the power of municipal corporations "to enact rules or ordinances for police government," to pass the ordinance forbidding the blowing of a locomotive whistle within the corporate limits of the municipality, if that ordinance did not conflict with the proviso in that Section of the Code to the effect that an ordinance of a municipality "shall not be inconsistent with the laws of this State."

The question here is this: Does the ordinance so conflict with the provisions of the statute as to make it void, for the reason that the Legislature has said the signal shall be the ringing of the bell or the sounding of the whistle, and the ordinance has declared that the whistle shall not be sounded?

The recognized principles as to "what constitutes conflict" between municipal regulations and the law of the State seems to us to be well expressed in certain language in 43 C. J., 218-220, from which we quote the following excerpts:

"The question as to whether or not a municipal ordinance or regulation is in conflict with the general law is sometimes difficult of solution, and cannot be determined by any fixed rule. Each particular case must be determined as it arises. Broadly speaking, the question whether a conflict exists depends upon whether the state has occupied the whole field of prohibitory legislation with respect to the subject. If such is the case it is held that a conflict exists. *In order that there be a conflict between a state enactment and a municipal regulation both must contain either express or implied conditions which are inconsistent and irreconcilable with each other. Mere differences in detail do not render them conflict-*

*ing. If either is silent where the other speaks, there can be no conflict between them. Where no conflict exists, both laws stand.* The rule that a municipal ordinance in conflict with a state law upon the same subject is void does not apply unless the state law with which the particular ordinance conflicts is intended to apply, and is, in fact, applicable and imperative in the particular municipal corporation in which such ordinance has been enacted.

"As a general rule, additional regulation to that of the state law does not constitute a conflict therewith.   \*   \*   \* *Merely because a municipal ordinance is not as broad as the statute does not render it so inconsistent as to make it void."* (Italics added.)

The declared principles are, we are confident, in harmony with numerous decisions of this State, not necessary to be here cited. See the annotations under Section 7233 of the Code of 1932, giving the proper authorities of municipal corporations of this State the power to establish such regulations and ordinances "respecting any subject as shall appear to them necessary and proper for the security, welfare and convenience of such cities and towns, or for preserving health, peace, order and good government within the same."

The General Assembly has said that a railroad corporation, at public crossings, must give one or the other of the two signals mentioned in the statute. It must either ring the bell, provided for in the statute, or it must sound the required whistle. The City of Union, by its ordinance, has said that the railroad company cannot sound the whistle. The city has not said that the railroad company cannot ring the bell. The General Assembly has declared that either one of the signals is sufficient. The City of Union has not attempted to interfere with the giving of one of the signals. The regulations of the State and those of the municipality are not "inconsistent and irreconcilable with each other." If the Legislature had said, which it did not say, that both

the signals, the ringing of the bell and the sounding of the whistle, should be given, the ordinance of the City of Union would have been inconsistent with the legislative action, irreconcilable therewith, and would have been so in conflict with the enactment of the lawmaking body of the State that it would have been void. The ordinance reserves to the railroad company the full right to give one of the signals, which the General Assembly has said would meet its requirements. The law, as made by the Legislature, that the whistle shall be sounded, is not "imperative in the  *  *  * municipal corporation" of the City of Union, since the law did not declare positively that at all crossings the whistle must be sounded. We are therefore of the opinion that the ordinance in question is not void, and that the lamented special Presiding Judge was in error in the instructions he gave thereabout:

The case of *Law et al. v. City of Spartanburg,* 148 S. C., 229, 146 S. E., 12, 13, depended upon by the respondent to sustain the charge given in the case, is not in conflict with our view. The facts upon which that case was determined were as follows: The General Assembly directed the erection of a tuberculosis hospital for Spartanburg County, and declared that the location for the building should be determined by the board of trustees of the Spartanburg General Hospital. Pursuant to the Act, a site for the hospital, within the limits of the City of Spartanburg, was selected. The city council of the City of Spartanburg passed an ordinance forbidding the erection, establishment, and operation of a tubercular hospital within the incorporate limits of the city. This Court held that the ordinance of the city was in direct conflict with the legislative enactment, and therefore void. It was said: "That which the State authorizes, directs, requires, licenses, or expressly permits a municipality is powerless to prohibit." The board of trustees of the Spartanburg General Hospital acted under express legislative enactment, and the city council of Spartanburg, subject, under the gen-

eral law of the State, to all legislative enactments of the Legislature, was powerless to interfere with the direct mandate of the General Assembly to the board of trustees of the hospital. The ordinance here in question is on an entirely and distinct basis from that of the Spartanburg ordinance. The General Assembly, as to signals for railroad crossings, has permitted one of two signals to be given, thereby leaving to the municipality in a large way the choice of which of the signals it prefers. As was said in the quotation from Corpus Juris, the question as to the conflict between a municipal ordinance and a general law of the State "cannot be determined by any fixed rule," and "each particular case must be determined as it arises."

In disposing of the question which we are deciding, we have not considered the duty of a railroad corporation, its servants and employees, to sound the whistle upon some occasions necessary for the preservation of life and property, even if a municipal corporation forbids such sounding, since that question, one which may be of great interest, does not appear to be properly before us at this time.

There is an appeal to this Court also on the part of the railway company from the order of the trial Judge requiring it to set forth in the transcript of record the testimony of witnesses, W. D. Harris, H. C. Lindsay, J. H. Morrison, and G. M. Dickerson. The appellant contends that the testimony of these witnesses was unnecessary for a determination of the issues before this Court. With that view we are in entire accord. There was no motion in the lower Court on the part of the appellant for either a nonsuit or directed verdict. Five of the six exceptions related to instructions given the jury. The sixth exception related to the refusal to grant the appellant's motion for a new trial, on the ground that the crossing statute (Section 4925, Civil Code of 1922, Section 8377, 1932 Code) is in violation of the Federal Constitution. The only fact necessary for a determination of any of the exceptions was the

testimony of the engineer as to his failure to sound the whistle. The transcript of record contains the testimony of all the witnesses in the trial and several exhibits, requiring for this purpose about 116 pages out of a total record of 146 pages. There was little, if any, need of all these pages, since the issues to be decided by this Court related only to legal questions. A short statement of the evidence, something like two or three pages, would have been entirely sufficient for the Court to have understood clearly all the legal questions. We have said repeatedly that much unnecessary matter is placed in transcripts of record, benefiting only those engaged in printing the records at the expense of litigants. While we have no objection to printers making money, we think the attorneys, in cases coming to this Court, should seek to save their clients unnecessary cost of printing and the Court the useless trouble of going through many pages of reading of no value in the determination of a cause.

The judgment of this Court is that both the appeals be sustained, and that the cause be remanded to the Court of Common Pleas for Chester County for a new trial.

MESSRS. JUSTICES STABLER, CARTER and BONHAM, and MR. CIRCUIT JUDGE C. C. FEATHERSTONE concur.