18120

CITY OF CHARLESTON, Respondent, v. Esau JENKINS, Appellant
(133 S. E. (2d) 242)

*Messrs. Moore & Brown,* and *Benjamin L. Cook, Jr.,* of Charleston, *for Appellant,*

*Messrs. Morris D. Rosen* and *J. Kenneth Rentiers,* of Charleston, *for Respondent,*

November 11, 1963.

Moss, Justice.

Esau Jenkins, the appellant herein, was arrested on October 12, 1962, and charged with the violation of Section 3-11, 1952 Code of the City of Charleston. He was tried before the Municipal Court of the City of Charleston on October 17, 1962, and found guilty of a violation of said ordinance. The conviction of the appellant was sustained by the Circuit Court. This appeal followed.

Section 3-11 of the Charleston City Code provides:

"It shall be unlawful for the owner or person in charge of any store, beer parlor, or other place of business or commercial establishment to sell, give away, or in any manner dispense or permit the consumption of any wines or malt liquors, in such store, beer parlor, or other place of business or commercial establishment between the hours of 1:30 A. M. and 7:00 A. M. * * *"

When this case was called for trial in the Municipal Court of the City of Charleston, the appellant made motions to quash and dismiss the warrant charging him with the violation of Section 3-11 of the Charleston City Code because it was inconsistent with Section 4-204 of the Code of Laws of South Carolina. The appellant further moved to dismiss and quash the warrant in this case upon the ground that he had a right, under Section 4-204 of the 1962 Code, to sell beer at all hours except between the hours of 12:00 o'clock on Saturday night and sunrise Monday morning, and Section 3-11 of the Charleston City Code was an unreasonable exercise of the police power of said City because it diminished the privilege guaranteed to him by Section 4-204 of the Code. The aforesaid motions to quash and dismiss were refused by the Judge of the Municipal Court of the City of Charleston and such was affirmed by the Circuit Court.

The City of Charleston was incorporated as such by an Act of the General Assembly enacted August 13, 1783. 7 Stats., 97. The charter of the City of Charleston granted

to its City Council, *inter alia,* the power and authority to make and establish rules, regulations and ordinances "\* \* \* requisite and necessary for the security, welfare and convenience of the said City, or for preserving peace, order and good government within the same."

Section 47-61 of the 1962 Code of Laws, confers upon municipalities the exercise of police power, subject to the limitations therein expressed, as follows:

"The city and town councils of the cities and towns of the State shall, in addition to the powers conferred by their respective charters, have power and authority to make, ordain and establish all such rules, by-laws, regulations and ordinances, not inconsistent with the laws of this State, respecting the roads, streets, markets, police, health and order of such cities and towns or respecting any subject as shall appear to them necessary and proper for the security, welfare and convenience of such cities and towns or for preserving health, peace, order and good government within them. \* \* \*"

"Governmental authority known as the police power is an inherent attribute of state sovereignty. It can belong to cities or other subordinate government agencies or divisions of the state when and as conferred by the state. But without doubt a state can delegate the power or at least authority to exercise it to municipal and other governmental agencies of the state. The delegation may be by constitution, statute or charter." McQuillin on Municipal Corporations, Sec. 24.36, page 522.

This grant of power for purposes of municipal legislation is as broad and comprehensive as it was within the power of the State to delegate. It is a grant of the sovereign police power of the State itself limited alone (1) by the territorial confines of a municipality authorized to exercise it, and (2) by the proviso that legislation thereunder shall not be inconsistent with the laws of the State. *Lomax v. City of Greenville,* 225 S. C. 289, 82 S. E. (2d) 191. Any and all ordinances enacted under Sec-

tion 47-61 of the Code must be in the exercise of the police power thus granted. *Southern Fruit Company v. Porter,* 188 S. C. 422, 199 S. E. 537.

The law of this State authorizes the sale of beer by persons duly licensed. Section 4-201 *et seq.,* of the 1962 Code of Laws of the State. However, Section 4-204 of the Code, provides that "It shall be unlawful for any person to sell or offer for sale any wine or beer in this State between the hours of twelve o'clock Saturday night and sunrise Monday morning", and provides a penalty upon conviction of a violation of the provisions of this section.

It is apparent from a reading of Section 3-11 of the ordinance contained in the Charleston City Code and Section 4-204 of the State Code, that the former imposes an additional regulation upon the operator of any place of business in the City of Charleston engaged in the sale of beer. The ordinance is broader than the statute in its scope and application because it covers not only the selling, giving away or dispensing of beer, but also has reference to permitting the consumption of the same in such place of business between the hours stated.

The preservation of the health, safety, welfare and comfort of dwellers in urban centers of population often requires the enforcement of very different and usually much more stringent police regulations in such district than is necessary in a State taken as a whole. A municipal corporation, under its authorized police power, may regulate any trade, occupation or business, the unrestrained pursuit of which might affect injuriously the public health, morals, safety or comfort; and in the exercise of the power particular occupations may be excluded from certain parts of the city or may be required to be conducted within designated limits, and some may be so offensive or detrimental as to justify their total prohibition. It can make no difference that the trade had been lawfully established prior to the prohibitory ordinance and that it has become offensive

solely on account of the growing up of the municipality about it. *Arnold v. City of Spartanburg,* 201 S. C. 523, 23 S. E. (2d) 735.

The practical question for determination here is whether Section 3-11 of the Charleston City Code is in conflict with Section 4-204 of the Code of Laws. The recognized principles as to what constitutes conflict between a municipal ordinance and the laws of the State is well expressed in the case of *McAbee v. Southern Ry. Co.,* 166 S. C. 166, 164 S. E. 444, as follows:

"The question as to whether or not a municipal ordinance or regulation is in conflict with the general law is sometimes difficult of solution, * * *. In order that there be a conflict between a state enactment and a municipal regulation both must contain either express or implied conditions which are inconsistent and irreconcilable with each other. * * * If either is silent where the other speaks, there can be no conflict between them. Where no conflict exists, both laws stand. * * *

" 'As a general rule, additional regulation to that of the State law does not constitute a conflict therewith. * * * Merely because a municipal ordinance is not as broad as the statute does not render it so inconsistent as to make it void.' "

In 37 Am. Jur., Municipal Corporations, Section 165, at page 790, it is stated:

"The mere fact that the state, in the exercise of the police power, has made certain regulations does not prohibit a municipality from exacting additional requirements. So long as there is no conflict between the two, and the requirements of the municipal bylaw are not in themselves pernicious, as being unreasonable or discriminatory, both will stand. The fact that an ordinance enlarges upon the provisions of a statute by requiring more than the statute requires creates no conflict therewith, unless the statute limits the requirement for all cases to its own prescription.

Thus, where both an ordinance and a statute are prohibitory and the only difference between them is that the ordinance goes further in its prohibition, but not counter to the prohibition under the statute, and the municipality does not attempt to authorize by the ordinance what the legislature has forbidden or forbid what the legislature has expressly licensed, authorized, or required, there is nothing contradictory between the provisions of the statute and the ordinance because of which they cannot coexist and be effective. Unless legislative provisions are contradictory in the sense that they cannot coexist, they are not deemed inconsistent because of mere lack of uniformity in detail."

By an Act of the General Assembly, approved April 14, 1933, 38 Stats. 287, the sale, manufacture, possession, storage and transportation of beer was legalized in this State. On October 27, 1942, the city council of the City of Spartanburg adopted an ordinance making it unlawful from that date to sell or offer for sale any beer, wine or other drink of an alcoholic content between the hours of twelve o'clock midnight Saturday and sunrise Monday, and providing penalties for the violation thereof. The validity of this ordinance was questioned in the case of *Arnold et al. v. City of Spartanburg et al.*, 201 S. C. 523, 23 S. E. (2d) 735. We should point out that at the time the *Arnold case* was instituted, the provision of what is now Section 4-204 of the State Code, was not a part of the Act legalizing the sale of beer in this State. What is now Section 4-204 of the Code was enacted by the General Assembly of this State on May 19, 1947. 45 Stats. 524. Thus, it appears that under the original Act legalizing the sale of beer in this State, there was no provision under said Act restricting the sale of beer between the hours of twelve o'clock Saturday night and sunrise Monday morning. However, this Court, after discussing whether or not the ordinance of the City of Spartanburg was in conflict with the general law of the State, held that the city ordinance making it unlawful to sell beer or wine, which had been declared nonintoxicating by

statute, in the City of Spartanburg from midnight Saturday until sunrise Monday, was not unconstitutional or in excess of the city's police power.

In the *Arnold case,* this Court approved the ordinance of the City of Spartanburg which imposed requirements different from those imposed by the Legislature with reference to the sale of beer within such municipality. The *Arnold case* fully supports the validity of the ordinance now in question before this Court, for there it was said:

"* * * It must be borne in mind that the ordinance in question does not prohibit the carrying on of a legal business, but is only a regulation of that business under the police power of the city. Such power to regulate valid business enterprises, including those which have been licensed by the State, has been exercised by municipalities ever since their inception with reference to a variety of legal enterprises of a commercial nature, particularly with reference to business transactions on Sunday."

We think that Section 3-11 of the Code of the City of Charleston is a reasonable, proper and valid exercise of the police power granted to such municipality by Section 47-61 of the Code. The provision of such ordinance is not inconsistent or in conflict with Section 4-204 of the Code. The Charleston ordinance merely regulates the hours during which beer may be sold, dispensed or permitted to be consumed in commercial establishments within the City of Charleston. The ordinance in question is a proper exercise of the police power of the municipality because the purpose thereof is to preserve the peace, order and good government within the city. The ordinance is regulatory and not prohibitory since it appears that all dealers in beer in the City of Charleston are treated alike, under similar circumstances, under the terms of the ordinance. It cannot be said to deprive the appellant of due process or the equal protection of the laws.

The only other question for determination is whether the trial Court erred in finding the appellant guilty of selling or permitting the consumption of beer in his place of business during prohibited hours when the appellant was not present in his place of business at the time the alleged offense was committed.

The record shows that the appellant was the owner and operator of a cafe located on Spring Street in the City of Charleston. Two city policemen testified that at approximately 2:15 A. M., on the morning of October 12, 1962, they visited the cafe of the appellant and observed two men sitting in a booth and they had on the table a quart bottle of beer and both men were drinking beer out of pasteboard cups. The officers asked for the appellant and an employee in the cafe sent a waitress to inform the appellant that the officers wished to see him. A few minutes later the appellant did appear in the cafe and was placed under arrest and charged with dispensing and permitting the consumption of beer in his place of business during prohibited hours.

There can be no dispute from the evidence that beer was being consumed in the appellant's cafe during prohibited hours. When the case against the appellant was tried, he did not offer any testimony.

We think the rule announced in 30 Am. Jur., Intoxicating Liquors, Section 337, at page 727, is applicable, and we quote therefrom the following:

"In a number of cases the view has been taken that proof of sale of intoxicating liquor by the servant of the defendant, contrary to the regulations prescribed for such sales, is *prima facie* evidence of the defendant's criminal responsibility therefor." See also 139 A. L. R. 319.

In the case of *Town of Hartsville v. McCall*, 101 S. C. 277, 85 S. E. 599, this Court said:

"Since an act by an agent has in law the effect of a personal act, if one employs another to do a criminal thing for him, he is guilty the same as though he had done it him-

self. 1 Bish. Cr. L., Sec. 631. The same principle is held in *State v. Anone,* 11 S. C. L. (2 N. & McC.) 27; *State v. Borgman,* 11 S. C. L. (2 N. & McC.) 34, and *State v. Williams,* 21 S. C. L. (3 Hill) 90."

We think the evidence is sufficient to sustain the conviction of the appellant for a violation of Section 3-11 of the Charleston City Code.

All of the exceptions of the appellant are overruled and the judgment of the lower Court is affirmed.

Affirmed.

TAYLOR, C. J., and LEWIS, BUSSEY and BRAILSFORD, JJ., concur.