574 S.E.2d 196

**DENENE, INC., d/b/a Trio Club, L.C. Entertainments, LLC., d/b/a Club Tango, and Let's Eat, Inc., d/b/a Port Side Cafe Uptown, Respondents,**

v.

**THE CITY OF CHARLESTON, Appellant.**

No. 25563.

Supreme Court of South Carolina.

Heard Oct. 23, 2002.

Decided Dec. 2, 2002.

Rehearing Denied Jan. 8, 2003.

---

1. The "orders of another" jury charge, is a correct proposition of law. *See, e.g. Brown v. Bailey,* 215 S.C. 175, 54 S.E.2d 769 (1949).

William B. Regan and Frances I. Cantwell, of Regan and Cantwell, LLC, of Charleston, for appellant.

John F. Martin, of Martin Law Firm, of Charleston, for respondents.

Justice BURNETT:

Respondents Denene, Inc., d/b/a Trio Club, L.C. Entertainments, LLC., d/b/a Club Tango, and Let's Eat, Inc., d/b/a Port Side Cafe Uptown (Businesses) brought this action challenging Appellant The City of Charleston's (the City's) Municipal Code Section 3-2 (the Ordinance). Among other claims, Businesses asserted state law, particularly South Carolina Code Ann. § 61-2-80 (Supp.2001), preempted the Ordinance. The trial judge granted Businesses summary judgment on their preemption claim and enjoined the City from enforcing the Ordinance. We reverse.

## *ISSUES*

I.  Did the General Assembly intend to preempt the regulation of hours of operation of retailers of beer, ale, porter and/or wine by enacting South Carolina Code Ann. § 61-2-80 (Supp.2001)?

II. Is the Ordinance inconsistent with South Carolina Code Ann. § 61-4-120 (Supp.2001)?

## *DISCUSSION*

Determining whether a local ordinance is valid is a two-step process. *Bugsy's v. City of Myrtle Beach,* 340 S.C.

87, 530 S.E.2d 890 (2000). The Court first considers whether the municipality had the power to enact the ordinance. If the State has preempted a particular area of legislation, a municipality is without power to regulate the field. *Id.* If the municipality had the power to enact the ordinance, the Court then determines whether the ordinance is consistent with the Constitution and general law of the State. *Id.*

## *I.*

■ The City argues the trial judge erred by holding the Ordinance is preempted by state law. We agree.

The Ordinance provides:

Commercial establishments which allow for the on-premises consumption of beer, ale, porter and/or wine shall be prohibited from operating between the hours of 2 A.M. and 6 A.M. on Mondays through Saturdays.[1]

Section 61–2–80 provides:

The department [Department of Revenue (DOR)] is the sole and exclusive authority empowered to regulate the operation of all retail locations authorized to sell beer, wine, or alcoholic liquors and is authorized to establish conditions or restrictions which the department considers necessary before issuing or renewing a license or permit. . . .

■ In construing statutory language, the statute must be read as a whole and sections which are part of the same general statutory law must be construed together and each one given effect. *TNS Mills, Inc. v. South Carolina Dep't of Revenue,* 331 S.C. 611, 503 S.E.2d 471 (1998). The Court must presume the legislature did not intend a futile act, but rather intended its statutes to accomplish something. *Id.*

■ "[I]n order to pre-empt an entire field, an act must make manifest a legislative intent that no other enactment may touch upon the subject in any way." *Town of Hilton Head Island v. Fine Liquors, Ltd.,* 302 S.C. 550, 552, 397 S.E.2d 662, 663 (1990).[2] In *Fine Liquors,* the Court concluded

---

1. The Ordinance was ratified on July 18, 2000, and took effect 180 days later.

2. Since *Fine Liquors,* the Court has held the legislature intended to preempt the entire field of bail bondsman regulation through a statute

the predecessor to § 61–2–80 did *not* indicate "the legislature intended to pre-empt the field, thereby precluding municipalities from passing any ordinance which affected the operation of liquor stores."[3] *Id.* Accordingly, the Court has already ruled on the issue presented by this appeal. *Id.*

Furthermore, § 61–2–80 was re-enacted after the issuance of *Fine Liquors.* Act No. 415 § 1, 1996 S.C. Acts 2459. Had the General Assembly disagreed with our decision in *Fine Liquors,* it would have clearly stated its position that the DOR occupies the entire field of beer and wine regulation as it did in enacting § 61–6–4490 (Supp.2001) ("Ordinances of political subdivisions of this State prohibiting the acts prohibited by the provisions of this article ... are hereby suspended, *it being declared that the State has occupied the field of the subject* covered thereby.") (Underline added).

Finally, § 61–4–120 generally prohibits Sunday sales of beer and wine and provides "[m]unicipal ordinances in conflict with this section are unenforceable."[4] By passing § 61–4–120 with § 61–2–80, the General Assembly recognized that municipalities have authority to regulate the hours of operation of retailers of beer and wine. It would have been unnecessary for the legislature to refer to municipalities' authority to regulate the hours of operation of retail sales of beer and wine if the General Assembly intended to occupy the entire field. *See AmVets Post 100 v. Richland County Council,* 280 S.C. 317, 313 S.E.2d 293 (1984) (state statute contemplated further

providing "[no] license may be issued to a professional bondsman or runner except as provided in this chapter." *Wrenn Bail Bond Service, Inc., v. City of Hanahan,* 335 S.C. 26, 515 S.E.2d 521 (1999). We have also determined a statute manifested a clear legislative intent for the State to preempt the regulation of watercraft on navigable waters where the statute specified any local laws must be identical to the state provisions. *Barnhill v. City of North Myrtle Beach,* 333 S.C. 482, 511 S.E.2d 361 (1999).

3. Section § 61–2–80 and its predecessor, § 61–5–190 (1990), are essentially the same except that the earlier statute empowered the South Carolina Alcoholic Beverage Control Commission, rather than the DOR, with authority to regulate the operation of retail liquor stores.

4. As addressed below, this Section does not impliedly permit beer and wine retailers to operate at all times other than those prohibited by statute, but rather precludes municipalities from permitting beer and wine retailers to operate on Sunday.

regulation of bingo by counties 'as it referred to licensing by counties).

## II.

The City argues the Ordinance is consistent with the Constitution and general law of the State. We agree.

In relevant part, § 61-4-120 provides:

It is unlawful for a person to sell or offer for sale wine or beer in this State between the hours of twelve o'clock Saturday night and sunrise Monday morning. . . . Municipal ordinances in conflict with this section are unenforceable.

As a general rule, "additional regulation to that of State law does not constitute a conflict therewith." *Town of Hilton Head Island v. Fine Liquors, Ltd., supra* 302 S.C. at 553, 397 S.E.2d at 664 *quoting Arnold v. City of Spartanburg*, 201 S.C. 523, 536, 23 S.E.2d 735, 740 (1943).

Further,

[I]n order for there to be a conflict between a state statute and a municipal ordinance 'both must contain either express or implied conditions which are inconsistent or irreconcilable with each other. Mere differences in detail do not render them conflicting. If either is silent where the other speaks, there can be no conflict between them. Where no conflict exists, both laws stand.'

*Fine Liquors, supra,* quoting *McAbee v. Southern Ry. Co.,* 166 S.C. 166, 169-70, 164 S.E. 444. 166 S.C. 166, 164 S.E. 444, 445 (1932).

In *City of Charleston v. Jenkins,* 243 S.C. 205, 133 S.E.2d 242 (1963), the Court determined a city ordinance which prohibited businesses from on premises service or consumption of any wines or malt liquors between 1:30 a.m. and 7:30 a.m. did not conflict with a state statute making it unlawful to sell wine or beer between midnight Saturday and sunrise Monday. Noting the ordinance merely imposed additional requirements on commercial establishments in the city, the Court concluded the ordinance was neither inconsistent nor irreconcilable with the State statute and its passage was a proper and valid exercise of the city's police power.

*Jenkins* controls our decision on this issue. While the Ordinance differs in scope from § 61–4–120 (the ordinance prohibits operation from 2:00 a.m. to 6:00 a.m. on Mondays through Saturdays while the statute prohibits sales from midnight on Saturday through sunrise on Monday), the two are neither inconsistent nor irreconcilable.

Furthermore, § 61–4–120 does not impliedly provide Businesses with a "right" to sell beer and wine at all times other than at those hours prohibited by the statute. As noted in *Jenkins,* the commercial establishments did not have the right to sell beer and wine at all hours other than those specifically prohibited by the state statute.

Finally, we note that if an ordinance unreasonably prohibits the sale of beer and wine, in effect banning a business which the State has deemed legal, the ordinance would exceed the police power of the municipality and be unenforceable.[5] *Id.* The Ordinance presently before the Court does not exceed the City's authority.

The decision of the trial judge is **REVERSED.**

TOAL, C.J., MOORE, WALLER and PLEICONES, JJ., concur.

---

5. *See* S.C.Code Ann. § 5–7–30 (Supp.2001).